**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| THE ESTATE OF EILEEN FRANCES BRITTINGHAM, DECEASED, BY AND THROUGH JAMES ANDREW BRITTINGHAM, ADMINISTRATOR, | ) ) ) ) ) | |
| **Plaintiff,** | ) ) | **Case No.: 1:24-CV-2236** |
| **v.** | ) ) | |
| **MILBANK INSURANCE COMPANY,** | ) ) | |
| **Defendant.** | ) | |

<u>**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL APPRAISAL**</u>

Pursuant to LR 7.2(a)(2) & (e), Defendant Milbank Insurance Company ("Milbank") submits this Response in Opposition to Plaintiff The Estate of Eileen Frances Brittingham, deceased, by and through James Andrew Brittingham, Administrator's ("Plaintiff") Motion to Compel Appraisal (D.E. 26), as well as Plaintiff's Memorandum in Support thereof (D.E. 26-1) both filed on October 7, 2024 (collectively, the "Motion"), and hereby responds as follows:

**I.    <u>FACTS</u>**

**A.    The Policy.**

On September 20, 2022, Milbank issued a homeowners insurance policy to Eileen Brittingham (also identified as "Plaintiff") with respect to a residence and other structures located at 103 Greenbriar Lane, Jackson, Tennessee 38305 ("the Property") bearing Policy No. 1000645072 with a policy period of October 27, 2022 to October 27, 2023 (the "Policy"). (D.E. 8-1 at PageID 177.) The Policy provided coverage for certain losses occurring at the Property subject to the Policy's terms, exclusions, and conditions. (*See generally* D.E. 8-1 at PageID 175-266.) The Policy provides the following relevant language:

F.      **Appraisal**

**If you and we fail to agree on the amount of loss**, either may demand an appraisal of the loss. In this event, each party will choose a competent and impartial appraiser within 20 days after receiving a written request from the other. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a court of record in the state where the "residence premises" is located. **The appraisers will separately set the amount of loss**. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss.

Each party will:
1.      Pay its own appraiser; and
2.      Bear the other expenses of the appraisal and umpire equally.

(D.E. 8-1 at PageID 213) (emphasis added).

B.      **Plaintiff's Claim and Milbank's Investigation Prior to Lawsuit Filing.**

On March 3, 2023, Plaintiff first reported a wind loss to the roof of the dwelling at the Property, which Plaintiff alleged had been caused by a storm occurring on March 3, 2023 ("the Alleged Loss"). (D.E. 8-0 at PageID 151, ¶¶ 9-11.) On March 18, 2023, through an independent third-party inspection company, Milbank conducted an initial inspection of the Property and found covered damage to the shingles on the roof of dwelling at the Property only. (*See* D.E. 8-0 at PageID 152-153, ¶¶ 15, 17.) On March 22, 2023, Milbank prepared an estimate representing the replacement cost value ("RCV") of covered damage totaling $4,010.88, depreciation of $585.09, and an actual cash value ("ACV") of $3,425.79. Milbank applied the Policy deductible of $1,000.00 and arrived at a payment amount of $2,425.79 for covered loss or damage. (D.E. 1-2 at PageID 131; *see also* D.E. 8-0 at PageID 152.)

Plaintiff purportedly retained a public adjuster, William Griffin ("Griffin"), to present her claim to Milbank on May 23, 2023. **Exhibit 1**. Milbank then retained an engineer from Donan Engineering Co., Inc. ("Donan") to inspect the Property's alleged roof damage. (D.E. 8-0 at

PageID 153, ¶ 17.)  The engineer prepared a report dated June 20, 2023 where he observed "[n]o whole shingles are missing, overturned, creased along a horizontal pattern, horizontally torn, or displaced. The upper laminate "teeth" of four shingles are torn and detached on the south slope." A copy of the Donan Report is attached hereto as **Exhibit 2**. The engineer did not observe any shingles damaged or missing on the remaining north, west or east slopes of the dwelling roof. *See id.* Milbank then sent Plaintiff a copy of the Donan Report and coverage letter explaining the findings of the engineer on July 27, 2023. A copy of the July 27, 2023 letter is attached hereto as **Exhibit 3**.

On August 15, 2023, Milbank received an email with a series of documents attached from Griffin and the contents of the email provided in part, as follows, "[p]lease see attached demand for payment / appraisal and supporting documentation for your records and pursuant to TCA 56-7-105." **Exhibit 4**. A copy of the document attached to Griffin's August 15, 2023 email that is represented to be the purported "demand for payment / appraisal" and received by Milbank on August 15, 2023 is attached hereto as **Exhibit 5**. Griffin also attached an estimate representing the damage to the Property to his August 15, 2023 email that listed the RCV at $418,230.42. A copy of the Griffin estimate received by Milbank on August 15, 2023 is attached hereto as **Exhibit 6**. Notably, Milbank observed a minimum of fifteen (15) separate trades included in Griffin's estimate where Milbank noted one trade was needed, roofing. (*See* D.E. 1-2 at PageID 124.) Griffin's August 2023 estimate included concrete, drywall, electrical, heavy equipment, framing & rough carpentry, insulation, masonry, painting of interior areas and exterior, roofing, siding, soffit, fascia & gutter, stucco, and windows. (*Id.*) Griffin's estimate represents that all: wood roof decking/sheathing, roof shingles, insulation in the attic, gutters, soffit and fascia, exterior siding

and windows on the dwelling must be replaced, among other significant repairs. (*Id.* at PageID 113-116.)

Milbank sent an email on August 16, 2023 to Plaintiff and Griffin in response to the August 15, 2023 email with a "memorandum of appraisal" attached that advised Plaintiff and Griffin that "[i]n good faith, we are willing to participate in the appraisal process for the roof covering only." (D.E. 1-3 at PageID 140.)

### C.    Issues Regarding the Appraisal.

The alleged appraisal demand attached to the Complaint as Exhibit B in this case, and as Exhibit B to Plaintiff's Motion, provides a date of August 8, 2023 in the top left corner. (D.E. 1-2 at PageID 102; D.E. 26-3 at PageID 423.) However, when the first page of Exhibit B attached to the Complaint and to Plaintiff's Motion are viewed in software other than the PDF, two (2) different dates are listed atop either Exhibit B: August 8, 2023 and August 7, 2023. Attached hereto as **Exhibit 7** is the Declaration of Joseph Dipiazza. Further, the document represented to be the "appraisal demand" allegedly from Plaintiff and included in Griffin's email from August 15, 2023 and actually received by Milbank only lists August 15, 2023, and does not include August 8, 2023 or August 7, 2023. *See* **Ex. 5**. Additionally, Milbank is unable to determine whether the signature on the "appraisal demand" is authentic due to degradation in the quality of the signature. *See* **Ex. 7, ¶ 14**. Therefore, Millbank avers there are issues with the authenticity of the documents alleged to be appraisal demands presented by Plaintiff in this case and investigation is needed. (*Compare* D.E. 1-2 at PageID 102, *with* **Ex. 5**, *and* **Ex. 7, Ex. A, B, C & D**.)

Further, Plaintiff failed to appoint an appraiser within twenty (20) days as required by the Policy. (*See* D.E. 8-1 at PageID 213). Milbank's appraiser, Craig Betts, was appointed by Milbank on August 16, 2023 and was not notified of Plaintiff's appraiser until September 10, 2023.

Attached hereto as **Exhibit 8** is the Declaration of Craig Betts. **Ex. 8, ¶¶ 4, 5**. Between September 10, 2023 and November 30, 2023, the appraisers did not inspect the Property and were also unable to agree on an umpire to move the Appraisal forward. **Ex. 8, ¶¶ 7, 10**. Plaintiff's appraiser was terminated on November 30, 2023 and as of the date of this Response, has not appointed a new appraiser for the appraisal process or contacted Milbank's appraiser to commence appraisal in the past 11 months. **Ex. 8, ¶¶ 8-14**.

> **D.    Procedural and Discovery Background.**

On April 18, 2024, Plaintiff filed suit against Milbank in this Court alleging claims for breach of contract, statutory bad faith and negligence against Milbank, and seeking specific performance of the Policy's appraisal clause, statutory, compensatory and punitive damages. (D.E. 1-0 at PageID 6-12; D.E. 12-0.)  Plaintiff became deceased on May 1, 2024 and this Court entered an order substituting "The Estate of Eileen Frances Brittingham, deceased, by and through James Brittingham, Administrator" as Plaintiff in this case on August 23, 2024. (D.E. 18 at PageID 296.) On September 26, 2024, Milbank served written discovery on Plaintiff to explore the claims made in the lawsuit and investigate the multiple, alleged appraisal demands in this case due to the death of Plaintiff. A copy of the written discovery served on Plaintiff is attached hereto as collective **Exhibit 9**. On October 9, 2024, Milbank issued subpoenas to Griffin and Griffin Building Consultants LLC. A copy of the subpoenas issued to Griffin and Griffin Building Consultants LLC are attached hereto as collective **Exhibit 10**.

On October 7, 2024, Plaintiff filed the Motion seeking a stay of the case until appraisal is completed. (D.E. 26; 26-1.)  The Motion provides that Plaintiff demanded appraisal on August 8, 2023 but the documents in this case do not reflect that contention. (D.E. 1-2 at PageID 102; **Ex. 5 & Ex. 7**.) Now, decedent is no longer able to provide testimony on whether she disputed the scope

and amount of what Milbank determined was covered loss, whether Plaintiff actually sought appraisal, the genuineness of any document purporting to be an appraisal demand, or the reasons why she and her representatives did not actually move forward with or participate in the appraisal between the alleged initial request for appraisal and the filing of this lawsuit many months later. (*See* D.E. 18.)

Further, the "Dead Man's Statute" is applicable in this case and Griffin nor anyone else can provide any testimony as to the transaction or statements made by Plaintiff prior to her death since he's an interested party by receiving a fee for public adjusting services.[1] *See* **Ex. 1** ("From the date you receive this "Letter of Representation", I/we, the undersigned insured(s) direct my/our "Insurance Carrier(s)" to include Griffin as a payee on all draft payments."). Lastly, questions loom over the authenticity of any purported appraisal demand and the Administrator of Plaintiff's estate, Plaintiff and Griffin cannot provide any testimony regarding the authenticity of the appraisal demands due to Plaintiff's death.

## II.    <u>LAW AND ANALYSIS</u>

This is a diversity action; therefore, the choice of law rule of the forum state applies. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009). Tennessee follows the rule of *lex loci contractus*, where a contract is presumed to be governed by the law of the state in which it was executed. *Williams v. Smith*, 465 S.W.3d 150, 153 (Tenn. Ct. App. 2014). The Policy was issued to Eileen Brittingham at the Property, which is located within Tennessee. (D.E. 8-1 at PageID 177; D.E. 1 at PageID 1-2, ¶¶ 1, 3, 5.)  The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Federal courts apply state substantive

---

[1] Tenn. Code Ann. § 24–1–203 ("In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.")

law and federal procedural law when adjudicating claims based on diversity jurisdiction. *Williams*

*v. United States*, 754 F.Supp.2d 942, 948 (W.D. Tenn. 2010). Thus, Tennessee state law governs

the substantive matters relating to the Policy interpretation.

**A.    Appraisal is Improper Because the Dispute Between the Parties is About Whether Particular Damage is Covered by the Policy Which Involves Legal Questions Involving Coverage and Causation Rather Than a Dispute as to the Amount of Loss.**

Plaintiff has moved to compel Milbank to enter into an appraisal regarding the matters

asserted in the Complaint, but Plaintiff seeks to appraise more areas of the Property than those

areas Milbank agreed were damaged by the covered storm event and covered under the Policy.

Milbank opposes any appraisal where the appraisers will be acting outside their authority by

appraising either undamaged areas of covered property or making causation determinations and

essentially, conducting an improper appraisal. The dispute between Plaintiff and Milbank involves

more than just a dispute as to the amount of loss; the dispute is predicated on coverage and

causation issues appraisers cannot decide based on Tennessee precedent and the Policy.

It is well-settled under Tennessee law that insurance policies are contracts. *Merrimack Mut.*

*Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 147 (Tenn. Ct. App. 2001). Questions relating to the

interpretation of written contracts involve legal rather than factual issues. *Brandt v. Bib*

*Enterprises, Ltd.*, 986 S.W.2d 586, 592 (Tenn. Ct. App. 1998). Moreover, courts have recognized

that "as such, courts interpret insurance policies using the same tenets that guide the construction

of any other contract." *Am. Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 814 (Tenn. 2000);

*Hurley v. Tenn. Farmers Mut. Ins. Co.*, 922 S.W.2d 887, 892 (Tenn. Ct. App. 1995). The terms of

an insurance policy "must be interpreted fairly and reasonably, giving the language its usual and

ordinary meaning." *Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 768 (Tenn. 2006).

Further, "the primary rule of contract interpretation is to ascertain and give effect to the intent of

the parties." *Clark v. Sputniks*, 368 S.W.3d 431, 441 (Tenn. 2012). Insurance policies should be

construed "as a whole in a reasonable and logical manner, and the language in dispute should be examined in the context of the entire agreement." *Id.* (quotations omitted).

Courts in Tennessee have routinely recognized that questions of coverage and causation are not appropriate for resolution through the appraisal process and issues of liability should be reserved for the judicial process. The Supreme Court of Tennessee succinctly stated "[a]n appraisal by its nature would only determine an incidental fact question, not the presence or absence of legal liability." *Meirowsky v. Phipps*, 222 Tenn. 112, 119-20, 432 S.W.2d 885, 888 (1968). Appraisal is a narrow procedure meant to quantify the monetary value of a property loss and is not intended to determine questions of coverage. *Merrimack v. Batts*, 59 S.W.3d at 149. Courts have held that "appraisal is the act of estimating or evaluating something; it usually means the placing of value on property by some authorized person." *Id.* "[T]he object of appraisal in cases of casualty insurance is to quantify the monetary value of a property loss ... not to decide questions of liability." *Id.* Moreover, courts have recognized "if liability is disputed, an appraisal on the "amount of loss" would not 'vest the appraisers with the authority to decide questions of coverage and liability.'" *Pear Tree Properties, LLC v. Acuity*, No. 3:16-CV-00551, 2017 WL 3674845, at *2 (M.D. Tenn. Aug. 25, 2017).

The Court of Appeals of Tennessee quoted with approval the process of submitting coverage and causation issues to the courts before undergoing appraisal. Specifically, the Court of Appeals noted:

> [o]ne court has suggested that disputed **coverage and liability issues are best submitted to the courts before any dispute regarding the amount of the loss is submitted to the appraisers**.

*Merrimack v. Batts*, 59 S.W.3d at 153 (emphasis added). *Merrimack* also stated the appraisal

provision does not grant authority to the appraisers or umpire to resolve any disputes concerning an

insurer's liability in the appraisal process:

> The plain language of Ms. Batts' homeowners policy confines the role of the
> appraisers to determining the 'amount of the loss'. In light of other courts'
> interpretation of similar language, we have concluded the trial correctly held that [the
> appraisers and the appraisal umpire] did not have the prerogative to determine whether
> any particular loss claimed by Ms. Batts was caused by the tornado or whether
> Merrimack was ultimately liable under it policy for the loss.

*Id.* These two statements, when read together, illustrate how the appraisal process is to be conducted

in Tennessee; coverage and causation issues are to be addressed first and then an appraisal takes place.

This is consistent with the express terms and intent of the Policy's Loss Payment provision. (*See* D.E.

8-1 at PageID 214.)

Tennessee law is consistent with holdings reached by other courts within the Sixth Circuit

addressing this issue. *The D Boys, LLC v. Mid-Century Ins. Co.*, 644 F. App'x 574, 578 (6th Cir.

2016) (holding that "matters of an insurance policy's coverage are generally for a court and not

for appraisers," and "[t]he appraisal process cannot legally settle coverage issues."); *Monteleone*

*v. Auto Club Grp. Memberselect Ins. Co.*, No. 13-CV-12716, 2014 WL 1652219, at *5 (E.D. Mich.

Apr. 23, 2014) (holding that "scope of coverage" was "not a matter for appraisal, and the law is

well settled that 'the issue of an insurance policy's coverage is for the court to decide, not the

appraisers.'"); *Dabaja v. State Farm Fire & Cas. Co.*, No. 14-13222, 2016 WL 1022968, at *2

(E.D. Mich. Mar. 15, 2016) ("the Court agrees with Defendant that the appraisal process does not

resolve issues of coverage, which are for the Court to determine.").[2]

---

[2] Other courts across the United States also agree that coverage and causation issues are not appropriate for appraisal
and best addressed prior to an appraisal. "This court must first determine the Policy's coverage of the losses and
Defendant's liability for those losses, before the matter can be submitted for appraisal of the value of those losses."
*Jefferson Davis Cty. Sch. Dist. v. RSUI Indem. Co.*, No. 2:08-cv-190-KS-MTP, 2009 U.S. Dist. LEXIS 16337, at *6-

For these reasons, this Court should deny Plaintiff's Motion and address the coverage and causation issues first as suggested and approved by *Merrimack*.

In this case, coverage is disputed and unresolved as Milbank paid for covered damages to one slope of the roof of the dwelling, but denied coverage for the Property's alleged damage to the interior and exterior areas of the dwelling other than the roof. (*See* **Ex. 3**.) Milbank's investigation revealed covered damage to a minor amount of roof shingles on one slope of the Property's roof and Milbank's valuation of the minor roof damage totaled RCV $4,010.88, which would only one trade to make repairs. (D.E. 1-2 at PageID 129-131; **Ex. 2**.)  Griffin's estimate representing the damage to Plaintiff's Property listed the repairs to the dwelling at RCV $418,230.42 – over one hundred times (100) the amount of Milbank's estimate! (*Id.* at PageID 111-124.)

---

8 (S.D. Miss. Feb. 11, 2009). The Supreme Court of Alabama also agrees coverage and causation are not appropriate for appraisal and should be decided prior to appraisal:

> [T]here was no ambiguity in the term "the amount of loss" as used in the appraisal clause that would permit an appraisal to include questions of coverage and liability. Thus, the appraisers' duty was limited to determining the "amount of loss"--the monetary value of the property damage. Therefore, the trial court erred in allowing them to decide questions of coverage and liability.

*Rogers v. State Farm Fire & Cas. Co.*, 984 So. 2d 382, 383 (Ala. 2007). Additionally, the Iowa Court of Appeals delivered a concise analysis of what exactly "amount of loss" in an appraisal clause means under an insurance policy and thus approved the process of submitting coverage and causation issues to the court prior to an appraisal:

> [T]he policy limits the scope of appraisal to "the loss" and "the amount of loss." Use of the definite article "the" means "the loss" has an antecedent; specifically "the loss" must refer to a specific loss rather than a non-specific loss to be determined by the appraisers. *See Am. Bus Ass'n v. Slater*, 231 F.3d 1, 4-5, 343 U.S. App. D.C. 367 (D.C. Cir. 2000) ("[I]t is a rule of law well established that the definite article 'the' particularizes the subject which it precedes. It is a word of limitation as opposed to the indefinite or generalizing force of 'a' or 'an.'" (citation omitted)); *State v. Hohenwald*, 815 N.W.2d 823, 830 (Minn. 2012) ("The definite article 'the' is a word of limitation that indicates a reference to a specific object."). **"The loss" is to be determined by the finder of fact, while "the amount" of "the loss" is for the appraisal panel.**

*Walnut Creek Townhome Ass'n v. Depositors Ins. Co.*, 906 N.W.2d 205 (Iowa Ct. App. 2017) (emphasis added). Thus, the scope of "the loss" is to be determined fully before submitting to appraisal and Milbank contends that appraisal should take place after coverage and causation issues are resolved, "the loss" is defined by the fact-finder and no coverage and causation issues loom over a binding appraisal. *See Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 261 F. Supp. 2d 293, 296 (S.D.N.Y. 2003) ("[D]efendant's motion to compel appraisal of plaintiff's claims must be denied as premature. While defendant argues that the insurer has a right under the policy to demand appraisal, it is not always appropriate for such appraisal to occur before other issues are resolved.).

Plaintiff, through Griffin, and allegedly adopted by Plaintiff in the sworn statement in proof of loss (D.E. 1-2 at PageID 106), identified additional items or areas of the dwelling that are claimed to be covered losses as a result of the March 3, 2023 storm event. (*See* D.E. 1-2 at PageID 113-124.)  To that end, Plaintiff's representative, Griffin, represents the following items or areas of the dwelling must be removed and replaced in their entirety: all wood roof decking/sheathing, shingles, insulation in the attic, gutters, soffit and fascia, all exterior siding and all windows in the dwelling. (*Id.* at PageID 113-116.) Per Griffin's estimate, the following items or areas require significant repair: stucco repair of $15,664.18, 1,292 sq. ft. of exterior painting, 397 sq. ft. of exterior brick work, 2,150 sq. ft. of re-pointing masonry/brick and 1,024.04 sq. ft. of interior drywall and painting repairs to the dwelling. (*Id.* at PageID 116-118.)  Lastly, Griffin's estimate included the following expenses valued at RCV to facilitate the repairs: telehandler/forklift totaling $32,486.19, equipment operator for the telehandler/forklift at $27,569.16, boom or spider lift totaling $10,815.32, equipment operator for boom lift at $51,637.18, a "mortgage processing fee" totaling $4,800.00, residential supervisor at $30,166.06, safety supervisor at $20,110.70, and a generator totaling $15,332.03. (*Id.* at PageID 113-119.)

The only overlap in Milbank and Griffin's evaluation of the loss was wind damage to one slope of the roof on the dwelling but the scope of covered loss and "amount of loss" have been exponentially expanded through Griffin's estimate to include practically the entire dwelling. As can be seen above and in the Complaint, the core dispute between the parties is not as to the amount of loss for the shingles on one slope of the roof on the dwelling, but rather a dispute exists over coverage and causation based on the completely inflated, and borderline fraudulent, scope of loss presented by Griffin. Therefore, the appraisal process in the Policy which is to determine the "amount of loss" is not appropriate for resolution of the coverage and causation issues that

predominate between the parties and this Court should not compel Milbank to undergo appraisal when it is clear the dispute between the parties involve questions of law reserved for this Court.

Further, Milbank sent an email on August 16, 2023 to Plaintiff and Griffin in response to the August 15, 2023 email from Griffin, with a "memorandum of appraisal" attached that advised Plaintiff and Griffin "[i]n good faith, we are willing to participate in the appraisal process for the **roof covering only**." (D.E. 1-3 at PageID 140) (emphasis added). Milbank made clear it would agree to appraisal for what it determined was covered by the March 3, 2023 storm and it would not consider or enter appraisal for what was represented in Griffin's estimate as the covered loss due to coverage issues. (*Id.* at PageID 139-142.)

Accordingly, at least as it is known and understood by Milbank through the Complaint, Plaintiff requests this Court find the Property suffered extensive damages throughout the dwelling's interior and exterior, as opposed to Millbank's determination that only minor covered damages occurred on one (1) slope of the residence's roof. A determination as to coverage and/or causation for the alleged roof damage on the entire roof dwelling, and whether all other claimed damage inside the dwelling and to the exterior of the dwelling, should be decided by the Court, and appraisal of this issue would exceed the scope of appraisal under both Sixth Circuit law and the language of the Policy.[3]

---

[3] Counsel for Plaintiff previously sought to compel appraisal in this Court through a near identical Motion to Compel Appraisal that was denied due to the presence of a dispute as to coverage and causation, instead of one as to the amount of loss, just like in this case. *Michael v. State Farm Fire & Cas. Co.*, No. 1:24-CV-01046-JDB-JAY, 2024 WL 3451563, at *1 (W.D. Tenn. May 24, 2024), *aff'd,* No. 1:24-CV-01046-JDB, 2024 WL 3243521 (W.D. Tenn. June 28, 2024). However, this case presents more many challenges than *Michael,* including, among others, the untimely death of Plaintiff which prejudices Millbank's ability to elicit testimony from Plaintiff on the topic of appraisal and Griffin and the Administrator of Plaintiff's estate cannot provide any testimony on statements or transactions with the insured regarding appraisal. *See* Tenn. Code Ann. § 24–1–203; *see also In re Estate of Marks,* 187 S.W.3d 21, 28 n. 2 (Tenn. Ct. App. 2005) (The statute also seeks to exclude interested parties from giving self-serving accounts of their conversations with the deceased).

**B.**     **A Motion to Compel Appraisal is Not the Correct Procedural Mechanism to Seek Specific Enforcement of a Contractual Provision and Prior Decisions in Courts of this State Have Held that an Insurance Policy Appraisal Provision Cannot Be Enforced via a Motion to Compel.**

Tennessee courts have recognized a motion to compel is not the proper procedural mechanism to seek specific performance of a contractual appraisal provision. In *Foster Real Estate Holdings, LLC v. The Phoenix Insurance Company*, the plaintiff-insured filed a claim with its insurer alleging that hail and wind damage had occurred to the insured commercial building. No. 3:21-CV-00135, 2021 WL 7084161, at *1 (M.D. Tenn. Aug. 3, 2021). The insurer agreed there was covered storm damage to the insured property but the insured disagreed with the amount of loss determined by the insurer. *Id.* There, the insurer refused to participate in appraisal and the insured subsequently filed suit against the insurer and thereafter filed a motion to compel appraisal. *Id.* The *Foster* Court held the filed motion to compel appraisal was improper because it "essentially seeks to compel specific performance of the contractual appraisal clause" and the insured "acknowledges as much in all its filings in support of the motion." *Id.* at *2. Additionally, the *Foster* Court noted:

> Specific performance is a type of equitable relief that should only be granted in limited circumstances where legal remedies are insufficient. Before compelling specific performance under a contract, a federal court must find 'that a valid contract exists between the parties, that the obligations under the contract are sufficiently clear, that the subject matter of the contract [is] unique in character and, finally, plaintiff's remedies at law are inadequate.'

*Id.* (internal citations omitted).

The *Foster* Court further held its consideration of whether specific performance of appraisal should be awarded would "effectively adjudicate the merits of significant parts of the parties' dispute" and determining whether appraisal should be compelled was not "appropriate in the contextual and procedural framework of a motion to compel appraisal." *Id.* The plaintiff's breach of contract claim was based in part on the defendant's refusal to honor an appraisal demand,

so allowing the appraisal would arguably establish the plaintiff's claim for breach of contract. *Id.* at *6. Likewise, the plaintiff's statutory bad faith claim is based, in part, on the defendant's intentional failure to proceed with appraisal, so granting compelled appraisal would arguably establish the defendant's alleged bad faith. *Id.* The *Foster* Court noted none of those outcomes would be "appropriate in the contextual and procedural framework of a motion to compel appraisal." *Id.* Thus, the court declined to rule on the plaintiff's requested relief without a proper dispositive motion and denied the motion to compel appraisal. *Id.* at *7 (noting that the denial was without prejudice to allow the plaintiff to properly file a motion for summary judgment to seek the relief requested).

Such reasoning is consistent with other Tennessee cases addressing this issue. *Battles, Inc. v. Nationwide Gen. Ins. Co.*, No. 3:19-CV-13-DML-DCP, 2020 WL 6365513 (E.D. Tenn. Mar. 10, 2020) (denying plaintiff's Motion to Compel Appraisal and holding that "the Court finds that Plaintiff failed to bring its request properly before the Court" and that a motion to compel was not the proper procedure to compel appraisal. Further holding that transformation of the motion to compel appraisal was unavailable due failures of the movant to comply with dispositive motion practice); *Morrison v. Harleysville Worcester Ins. Co.*, No. 319CV00011JRGDCP, 2019 WL 13196974, at *1 (E.D. Tenn. Oct. 7, 2019) ("considering that specific performance is proper only in limited circumstances, the Court declines to exercise its power without a motion for summary judgment or an adjudication on the merits.")

As shown by Tennessee law addressing this issue, Plaintiff's Motion, which seeks specific performance of the Policy's appraisal provision, is not supported by any rule of the Federal Rules of Civil Procedure or statute. Not only does Plaintiff's Motion to Compel Appraisal "foreclose [Milbank's] contention that the appraisal clause is inapplicable and unenforceable" and is

improper, it also seeks "an extraordinary remedy" which is should not be addressed "absent a motion for summary judgment or an adjudication on the merits." *Rocky Waters Motor Inn, LLC v. The Travelers Indemn. Co. of N.A.*, No. 3:19-cv-00006-DCLC (E.D. Tenn. Oct. 28, 2019). Moreover, Plaintiff does not allege anywhere that the appraisal provision must be enforced because its remedies at law are inadequate and sets forth no reasons or evidence supporting its request for the extraordinary relief of specific performance sought in the Motion. Lastly, the Motion does not address, in any way, Milbank's contentions regarding the true nature of this coverage dispute, all of which were in the record when the Motion was filed. (*See* D.E. 8-0.)

Thus, the Motion is a procedurally improper, dispositive motion, which seeks specific performance, prior to a finding that Plaintiff's remedies at law are inadequate. Just like the plaintiffs in *Battles* and *Foster*, Plaintiff alleges breach of contract, including "Milbank's refusal to honor Plaintiff's demand for appraisal as outlined in the Policy and Tennessee law," as well as bad faith "Defendant's intentional refusal to allow the appraisal process to determine the amount of Loss dispute" and "Milbank intentionally, fraudulently, maliciously, and/or recklessly: . . . (10) refused Plaintiff's contractual right to appraisal to resolve its dipsute with Milbank concerning the amount of loss …" (D.E. 1 at PageID 7-10, at ¶¶ 34, 37, 43.h.). Further, in the prayer for relief, Plaintiff requests an "Order compelling Defendant, Milbank, to properly proceed with appraisal …" (D.E. 1 at PageID 12). By requesting specific performance of the allegations raised and prayers for relief requested in the Complaint, Plaintiff's Motion essentially seeks a ruling on the merits of essential issues in the parties' dispute. Like the insurers in *Battles* and *Foster*, Milbank disputes coverage on the basis of causation and asserts some of the claimed damage to the Property was caused by wear and tear, deterioration, maintenance, inadequate or faulty materials, construction or repair, and weathering of the roof. (*See* **Ex. 3**.) Therefore, like the Eastern District in *Battles*

and the Middle District in *Foster*, this Court should deny Plaintiff's Motion by declining to rule

on the merits of the claim, which has been improperly brought before this Court.

**C.      Plaintiff Waived and/or Abandoned Appraisal By Failing to Comply with the Appraisal
Clause and Also, By Conduct Consistent with Abandoning Appraisal.**

Plaintiff filed the Claim on March 3, 2023, Milbank evaluated Plaintiff's claimed loss in

March 2023, and Milbank issued an undisputed payment in March 2023. (D.E. 8-0 at PageID 151-

152, at ¶¶ 9, 10, 15.)  Millbank did not receive any purported appraisal demand until August 15,

2023. *See* **Ex. 5**; *see also* D.E. 8-0 at PageID 153, ¶ 20.) Additionally, Plaintiff did not appoint an

appraiser within twenty (20) days of any alleged demand for appraisal whether any purported

appraisal demand was submitted on August 8, 2023 or August 15, 2023. (*See* D.E. 8-1 at PageID

213; *see also* **Ex. 8, ¶¶ 5-6**.)  Even worse, Plaintiff abandoned the Appraisal as Plaintiff and her

representatives had no communication with Milbank's appointed appraiser or Millbank between

November 30, 2023 and the filing of the lawsuit months later in April 2024. **Ex. 8, ¶¶ 8-16**.

Waiver is "a voluntary relinquishment by a party of a known right," and "it may be proved

by express declaration; or by acts and declarations manifesting an intent and purpose not to claim

the supposed advantage; or by a course of acts and conduct." *Gaston v. Tenn. Farmers Mut. Ins.

Co.*, 120 S.W.3d 815, 819 (Tenn. 2003) (quotations omitted). "Tennessee law recognizes that

appraisal clauses in insurance contracts can be waived by delay in demanding appraisal causing

prejudice to the opposing party." *J. Wise Smith & Assocs., Inc. v. Nationwide Mut. Ins. Co.*, 925

F. Supp. 528, 532 (W.D. Tenn. 1995). Setting aside Plaintiff's unreasonable and unexplained delay

in allegedly demanding appraisal in August 2023 after Milbank evaluated the claim in March 2023,

Plaintiff completely failed to participate in the belatedly requested Appraisal and also failed to

comply with the terms of the Policy's appraisal provision by failing to appoint within twenty (20)

days after demanding appraisal. Due to the inexplicable delays and failures to comply Plaintiff's

should be denied. *See Bard's Apparel Mfg., Inc. v. Bituminous Fire and Marine Ins. Co.,* 849 F.2d 245, 249 (6th Cir. 1988) (concluding that insurer waived its right to appraisal when demand was made six months after the loss occurred).

Again, Milbank's appraiser was not notified of Plaintiff's supposed appraiser appointment until September 10, 2023, more than twenty (20) days after appraisal was allegedly demanded by Plaintiff. *See* **Ex. 8, ¶¶ 5-6**. Additionally, when Plaintiff's appraiser's services were terminated by Griffin on November 30, 2023, Plaintiff did not appoint a new appraiser or take any steps towards completing appraisal; other than the filing of the Complaint and this motion. *See* **Ex. 8, ¶¶ 8-16**. As of the date of this Response, Milbank's appraiser has not been contacted by any appraiser appointed by Plaintiff since November 30, 2023 and the unreasonable delay between Plaintiff's last actions regarding appraisal on November 30, 2023, and the date of this Response are grounds to deny appraisal due to Plaintiff's waiver or abandonment. *See Bard's Apparel Mfg., Inc. v. Bituminous Fire and Marine Ins. Co.,* 849 F.2d 245, 249 (6th Cir. 1988) (concluding that insurer waived its right to appraisal when demand was made six months after the loss occurred). Plaintiff's conduct "is so inconsistent with the right to appraisal" as to "constitute a waiver of that right." *J. Wise Smith, 925 F. Supp.* at 532. For these reasons, Plaintiff's Motion should be denied.

**D.     Tenn. Code Ann. § 24-1-203 Bars Testimony from the Administrator or Executor, and Any Interested Parties as to Any Statement or Transaction by the Decedent.**

As additional grounds, due to (1) the numerous versions of alleged "appraisal demands" circulating in this case,  and (2) the fact neither Plaintiff nor Griffin can introduce testimony that Plaintiff in fact sought and demanded appraisal, this Court should deny Plaintiff's Motion. With respect to point (2), under Tenn. R. Evid. 601, "[e]very person is presumed competent to be a witness except as otherwise provided in these rules or by statute." The Dead Man's Statute is one exception to the presumption of competence:

> In actions or proceedings by or against executors, administrators, or guardians, in which judgments may be rendered for or against them, neither party shall be allowed to testify against the other as to any transaction with or statement by the testator, intestate, or ward, unless called to testify thereto by the opposite party. If a corporation is a party, this disqualification shall extend to its officers of every grade and its directors.

Tenn. Code Ann. § 24–1–203. A witness does not become wholly incompetent to testify when the statute applies, but the statute does limit the subjects a witness can address. The purpose of the statute is "to prevent the surviving party from having the benefit of his own testimony, when, by the death of his adversary, his representative was deprived of his executor's version of the transaction or statement." *McDonald v. Allen,* 67 Tenn. 446, 448 (1874). The statute also seeks to exclude interested parties from giving self-serving accounts of their conversations with the deceased. *See In re Estate of Marks,* 187 S.W.3d 21, 28 n. 2 (Tenn. Ct. App. 2005); *see also Cantrell v. Estate of Cantrell,* 19 S.W.3d 842, 846 (Tenn. Ct. App. 1999) (Tenn. Code Ann. § 24–1–203 prevents interested parties from giving self-serving testimony regarding conversations or transactions with the deceased when the testimony involves transactions or statements that would either increase or decrease the deceased's estate.) Accordingly, the Dead Man's statute makes it burdensome for any claimant to produce admissible evidence as to a decedent's understanding or intentions, in the absence of some sort of documentary proof. *Burke v. Arnold,* 836 S.W.2d 99, 100 (Tenn. Ct. App. 1991); *Leffew v. Mayes,* 685 S.W.2d 288, 293 (Tenn. Ct. App. 1984).

In this "action[] by … [an] administrator[], in which judgments may be rendered for … them", through application of Tenn. Code Ann. § 24–1–203, neither the Administrator of Plaintiff's estate nor Millbank can provide testimony[4] regarding any statements made by Plaintiff regarding the

---

[4] Additionally, any such testimony proffered by the Administrator of Plaintiff's estate and by Griffin that the deceased sought the Appraisal, will be inadmissible hearsay. A Court may not consider hearsay evidence, including at the summary judgment stage. *Carter v. Univ. of Toledo*, 349 F.3d 269, 274 (6th Cir. 2003). "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." *Back v. Nestle USA, Inc*., 694 F.3d 571, 577 n.1 (6th Cir. 2012) (quoting *United States v. Rodriguez-*

Appraisal, among other important issues. Likewise, because Griffin was Plaintiff's public adjuster who was retained to present the claim to Milbank for a fee or portion of the amount recovered under the Policy, he cannot provide testimony on Plaintiff's statements regarding appraisal due to his interest in the outcome. *See* Tenn. Code Ann. § 56-6-913 ("A public adjuster may charge the insured a reasonable fee."); *see also* **Ex. 1**; *In re Estate of Marks,* 187 S.W.3d at 28; *Cantrell,* 19 S.W.3d at 846; Tenn. Code Ann. § 24–1–203. Thus, Millbank avers Plaintiff has no admissible, authentic evidence to present that the insured ever requested Appraisal prior to the filing of this lawsuit. To the extent, Plaintiff did not, in fact, request Appraisal prior to the filing of the Complaint, then Plaintiff's Motion should be denied as well. *See J. Wise Smith*, 925 F. Supp. at 532 (ruling that it was improper to wait until the filing of a lawsuit to request appraisal).

**E.    Plaintiff's Motion Should Be Denied Because Milbank Discovery is Needed on the Issues Presented in the Motion.**

As a final, additional ground for denying Plaintiff's Motion, Millbank avers the Motion should be denied because additional discovery is needed for Milbank investigate the varied, alleged "appraisal demands," and because this Court needs to adjudicate the numerous coverage and causation issues. Millbank should be afforded the opportunity to conduct both party and non-party discovery as to the issues related to the Appraisal, especially since Plaintiff is now deceased and the only information regarding a "request" for Appraisal is varied and appears to have been altered.

In this regard, Milbank has issued subpoenas to Griffin and Griffin Building Consultants LLC (named in Plaintiff's Initial Disclosures), to request documents and information related to the Appraisal, digital data, and electronically stored information at issue in this litigation. Moreover, Milbank served written discovery on Plaintiff on September 26, 2024, to which responses are due

---

*Lopez, 565* F.3d 312, 314 (6th Cir. 2009) (quotations omitted)). As a general rule, hearsay evidence is inadmissible unless an exception applies. *See* Fed. R. Evid. 802. Here, no hearsay exceptions apply.

on October 28, 2024. (*See* **Ex. 9**.) Milbank has acted promptly on investigating the issues discussed

in this Response, including alerting the Court at the initial Case Management Conference on

September 10, 2024. (*See* D.E. 22.) Should this Court stay litigation as Plaintiff requested, Plaintiff

will be allowed to skirt the discovery process and Milbank will be prejudiced as it will not be able

to effectively defend against Plaintiff's claims or ascertain the facts underlying Plaintiff's claims

in this matter.

Likewise, Milbank anticipates noticing depositions for Griffin, a 30(b)(6) representative of

Griffin Building Consultants LLC and an authorized representative of Plaintiff upon receipt of the

information requested in the subpoena and written discovery. In sum, Milbank has the right to

obtain relevant discovery to support its defenses and challenge Plaintiff's claims, including

discovery relevant to its defenses set forth in its opposition to the Motion. Therefore, since

discovery in this lawsuit is needed to determine the extent of liability of Milbank and whether

matters related to appraisal can be used as an element in Plaintiff's breach of contract and bad faith

claims, Plaintiff's Motion should be denied. Instead, Milbank should be allowed the right to obtain

additional, relevant discovery to investigate the various issues in the case and defend against the

claims made in the Complaint, including questions regarding whether the insured ever requested

the Appraisal prior to filing the lawsuit. Milbank respectfully requests that Plaintiff's Motion be

denied.

### III.    <u>CONCLUSION</u>

Plaintiff's Motion should be denied because (1) appraisal is not appropriate because the

dispute between the parties is based on whether the claimed damaged is covered and not as to the

"amount of loss," (2) a motion to compel is not the proper procedural mechanism to request

specific performance, (3) alternatively, even if the many appraisal demands are authentic and

reliable, Plaintiff waived and/or abandoned any appraisal by failing to comply with the appraisal

provision and by failing to pursue appraisal, (4) Tenn. Code Ann. § 24-1-203 bars any testimony

from interested parties on any transactions or statements made by Plaintiff, and (5) the case should

not be stayed because Milbank timely served both (i) written discovery upon Plaintiff and (ii)

subpoenas upon non-parties and staying litigation would deprive Milbank of the tools and

resources of discovery. For the foregoing reasons, Milbank requests the Court enter an Order

denying Plaintiff's Motion.

> Respectfully submitted,
>
> */s/ Matthew B. Rogers*
> Brian C. Neal (BPR #022532)
> Matthew B. Rogers (BPR #038777)
> BURR & FORMAN LLP
> 222 Second Ave. South, Suite 2000
> Nashville, TN 37201
> Telephone: (615) 724-3200
> Facsimile: (615) 724-3290
> Email: bneal@burr.com / mrogers@burr.com
> *Attorneys for Defendant Milbank Insurance Co.*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of October 2024, a copy of the foregoing was served via the Court's CM/ECF system on the following:

> David S. Farber
> 2199 Ponce de Leon Blvd., Suite 301
> Coral Gables, FL  33134
> dfarber@dfarberlaw.com
>
> */s/ Matthew B. Rogers*